Good morning. Good morning, Your Honors. May it please the Court, Ray Cardozo for Appellant ThermoLife, and with me is Greg Collins. And I'd like to reserve five minutes for rebuttal. Sure. After the summary judgment was entered in this case, the Supreme Court's Palm Wonderful decision eradicated the core premise that underlay the District Court's reasoning running from beginning to end of that summary judgment. In addition to the Lanham Act preclusion ground, which is clearly erroneous now and cannot stand and has to be reversed, you see the District Court's analysis of the falsity and injury elements of a Lanham Act case compromised by its erroneous view that unless and until the FDA has weighed in on the advertisement, the propriety of an advertisement that a product is safe or natural, a District Court has no ability or it's improper and is invading the province of the FDA to pass judgment on whether that advertisement is false or not. So is your position that the Lanham Act claims stand separate and apart if the label itself makes false representations that can support a Lanham Act theory, notwithstanding the fact that the FDA may or may not later take action under the FDA declaring the same? Yeah, that's exactly the whole thing in Palm Wonderful, because the Court pointed out that in these only partially regulated industries where you can go to market without the FDA weighing in at all, it's an honor system, self-policing, were the Court to hold otherwise, not only would that undermine the fact that Congress passed two statutes that each get equal dignity, but that would leave the consumers in the partially regulated industries, the with less protection than in the industries where there's no regulation at all. And that makes, and this case is a perfect illustration of that. We've got a party that's peddling legal poison to the market just by abusing the honor system. It takes the FDA five years to figure it out. Once it does, that product is gone from the market, gone completely. None of these sales are possible. But the competitor in that market, who had to endure it, has no cause of action. That is a clearly erroneous line of thinking, and it permeated the District Court's opinion on falsity. The Court made the conclusion it wasn't false when made. Of course it was false when made. It's simply the FDA hadn't taken a position. What's the evidence that it was false when made? Let me start with the easy one, natural. Dr. Sox, qualified scientist, testifies. Start, let me stop you there. Dr. Sox's, was his affidavit stricken? He was stricken on the ground that his safety opinion would not aid the jury. But the District Court did not comment on his statement, which is a pure factual assertion of a scientist, that this product is not found in nature. So even if we were to affirm Judge Wake's ruling on part of Dr. Sox, the rest of Dr. Sox, you say, gets you there? That particular fact, there's no basis for excluding it. He's qualified to say that, whether this compound is found in nature. And he testifies to that at his report. And again, we also have one of the documents that were hid in discovery and surfaced later in the case at ER 612, GNI's own employee writing to Mr. Gasparri saying, this product is an anabolic steroid in the classical sense. That's an admission, it's not natural. And then we have all of these documents that show, once they realize that, we got to reformulate the product, we got to come up with a plan B, the FDA is coming, we got to get out of this game. There's clearly evidence that raises a triable issue of fact on whether it is natural. The district court didn't discuss that at all, didn't discuss the evidence at all. Just said, it's a non-actionable opinion, because the FDA hasn't weighed in. Do we have to get into these, all these other experts whose declarations were stricken? You actually, you don't have to, because it clearly has to go back on the safety and natural counts. I do think you should open up the other issues again, because one of the spillover effects about the district court's erroneous lens in this case, these other issues, the district court said early in its opinion, there's no case here. And then on issue after issue, it kind of had the rear view mirror approach to it. I've already found there's no case because of Lanham Act preclusion, and suddenly I'm throwing out experts, I'm ignoring discovery spoliation, I'm doing all of these things. I think it would be the appropriate and fair thing to our client, now that the controlling law that was a bedrock of this decision has been changed, to see if we get a fair crack at those issues. Because some of the rulings— Well, what I hear you saying is you do want us to find an abuse of discretion in all of his evidentiary rulings striking those experts. Either a revisit, because— Counsel, it's either one or the other, right? Yeah. Okay, I'll— It's a yes or no position. Then I'll just come down on yes. Okay. There's a clear abuse of discretion on SOGS. Thank you, because that's what you were saying. Let me point out two clear abuses of discretion. On SOGS, this court's precedent in Southland SOD is that when you rely on—when a product assertion is based upon their purported test, testing support for it, as we have in this case when they're advertising, we've got rock-solid safety data, falsity can be shown by showing that the tests don't support the assertion. Well, that's true, but the problem is that the district court struck at least one of the experts, to use a crude term, on the grounds that it was—that the opinion was based on I don't think the district court used that term, but that's what I interpreted the court to have done. And if that's the case, why isn't that inherently the role of the district court in the gatekeeping function under Dalbert? That was the market expert, which I'll come to in a second. But on SOGS— Well, you told me that you want us to reverse all the rulings on striking the expert. So let's take the one—the expert you don't want to talk about, which is the junk science expert. Okay. On the junk science expert, the district court's error was it criticized the market expert used various factors to winnow who were the reliable competitors. The district court said this is arbitrary, he's making it up. But that's—in our view, that's a point for cross-examination, because the analysis you have to do is the analysis that this market expert does in a Lanham Act case. You know, we had that—we had that in bank opinion, I think it was Bear Opin, where we overturned a $10 million verdict for the plaintiffs on the grounds that the district court had not completed the gatekeeping function by making a finding at the Dalbert hearing that the science was reliable so that it could then go to the jury for whatever weight the jury would give it. Here the district court said it's not based on reliable science, and therefore, I'm excluding it. And doesn't our case law say that we have to find that that's an abuse of discretion under 702 in the gatekeeping function? Without conceding that point, the market expert is only relevant to quantify the damages and summary judgment. So can't you try the case without him? Possibly. Without conceding that point, I don't want to use up my time. I want to get back to Sotts, which was a clear abuse of discretion. Because there, the methodology he employed was not junk science. He did exactly what any scientist does. He looks at the studies—he's qualified to do this—and he says, do they support the proposition? The district court excluded him on the ground that his opinion isn't helpful when the ultimate issue for the jury is the safety of the products. But it missed this point from Southland, it was an error of law, that the inquiry falsity in this instance is on whether those studies support the assertion. Clearly his opinion is helpful to a jury on that. How's a jury supposed to—a lay jury supposed to do that without an expert opinion? That was a clear abuse of discretion. The second clear abuse of discretion is on the survey expert. This Court in Southland, Gallo, multiple times has made crystal clear that the correctness of the survey, whether it's biased, all of those things are cross-examination point. Because the junk science point, the methodology, a consumer survey is a well-established method for determining market confusion in a Lanham Act case. But that doesn't—you know, I hear your argument, but at some point the district court has to make a reliability determination. And if the questions are written in such a biased fashion, and if the sample survey size is so small that the results are statistically unreliable, why can't the district court say, I'm not letting this in, it just doesn't meet the reliability and helpfulness? In a very extreme case, that might be possible. But if you compare this case to Southland and Gallo, it's no different. Because one of its conclusions of bias the district court made was erroneous fact-finding. The questions aren't biased if the jury finds the facts to be as the survey expert set them up. So again, when you're performing a gatekeeping function on summary judgment, you're not allowed to weigh the facts. You have to consider the possibilities of all the facts the jury might find and the questions aren't biased if you take a look at them, given what's on the table factually. I think you're confusing the summary judgment standards with the district court's independent obligation under Rule 702 to make the determination as to whether the expert's testimony will help the jury or add further confusion of the issues that the jury has to decide and whether or not it's sufficiently worthy of belief based on general scientific principles that attend it. Yes, but balanced against that is the point, again, made in this Court's precedence in reversing district courts that excluded surveys identical, subject to the same criticism, Southland, Sodd, and Gallo, was the point that in performing that gatekeeping function, you can evade the trial function. So the facts as the jury might find them is how you have to evaluate whether the survey is biased. It's not biased if the questions are within the range of facts that the jury might find. That's the only way you can properly perform gatekeeping without invading the jury's function. What I hear you arguing is that virtually any time you designate someone as an expert, the district court has to permit that expert to come in because whatever flaws there may be in the expert's opinion is for the jury to sort out. Absolutely not. This is exact errors that were made in a couple of cases because the methodology of surveying is well established. That's the distinction in this case. I want to reserve the rest of my time for rebuttal, but I want to emphasize the point that none of the expert opinions matter because safety, naturalness, all of the elements of the case are proven and established sufficient to go to trial even without the experts. Does that go for the Arizona claims as well? Yeah, because those were just derivative. They chucked them on the ground that without the line of match, you can't have those claims. Thank you. Mr. Cardozo. Mr. Plucker. Good morning, Your Honors. Cobra Plucker on behalf of Gasparri. May it please the Court. Could you pull the mic up a little closer to you, please? Thank you. Yeah, it's the problem of being 6'4", Your Honor. Thank you. In reading Thermalife's brief and in listening to their oral argument today, you'd come away with the distinct impression that this entire case turns on Palm Wonderful or turns on issues of falsity of the alleged assertions, but it doesn't. It doesn't at all. The district court had several other independent bases for granting judgment to Gasparri. Among those were the district court's determination that Thermalife failed to establish the fact of injury, failed to establish the amount of injury, and failed to establish that the alleged misrepresentations were material in the first place. Now, we could spend hours going through all of the ways we can get to judgment for Gasparri because Judge Wake provided a very thorough 40-page decision outlining multiple reasons why Gasparri was entitled to judgment, but you don't have to go through it all. There's a few key ... You do agree that the district court was wrong about the Lanham Act preemption? Your Honor, I don't think so. I think what Thermalife is suggesting the Supreme Court said in Palm Wonderful goes far beyond what they actually said. In Palm Wonderful, they were looking generally whether there was the fact of the FDCA precluded a Lanham Act claim. There were some labeling misrepresentations that were at issue in this case, and the question was does generally the fact that the FDA have the ability to go and regulate it prevent someone from regulating it under the Lanham Act? They were focused on the distinction between consumer protection and competitor protection. This is a competitor case, and they expressly said that the Lanham Act is designed to protect competitors. That's true, but what the Supreme Court did not get to and did not overturn was Congress's express determination that the FDCA and DSHEA cannot be privately enforced. There is a massive amount of precedent that says that you can't enforce the FDCA or DSHEA through the Lanham Act. You can't backdoor Congress's prohibition. No, the Supreme Court never got to that. Counsel, the district court said that there is no Lanham Act claim here because the FDA has not rendered a decision that there's mislabeling, and Palm Wonderful clearly says that's wrong, doesn't it? Well, I think you have to focus on ultimately what the claim by Thermal Life is. Well, didn't the district court say that? That was one of the statements that the district court made. Yes, Your Honor. So that's an error of law. So that being the case, do we have any choice but to send back the ruling that there is no viable Lanham Act claim here? Because the district court just got it wrong. The Supreme Court later said the law is different than what we and the district court thought the law was. Well, no, Your Honor, for several reasons. The first is the Palm Wonderful decision and the issues in Palm Wonderful have nothing to do with the other independent bases for judgment, including the judgment on fact of injury, amount of injury. I mean, just talking about the dismissal of the Lanham Act claim, that's my question. Sure, but I'm talking about the material elements of the Lanham Act claim that the district court judge determined that Thermal Life failed to establish. So they failed to establish a prima facie case under the Lanham Act, but moreover, what the district court was getting at and what this court has said in Photometrics is that you can't privately enforce the FDCA or DSHEA, and you can't do that by backdooring it through the Lanham Act. Now— Well, that gets back to my question to opposing counsel. You're not taking the position, are you, in light of Palm Wonderful, that if the label conveys a misrepresentation, that could support a Lanham Act claim, even though the FDA has not made a formal regulatory determination that the label constitutes mislabeling under the Food, Drug, and Cosmetics Act? Well, Your Honor, I think what I'm focusing on is their claim that this product shouldn't have been sold in the first place, that under DSHEA, that they didn't have the right to sell the product. Now, remember, some of the misstatements they're claiming that Ghasparri made is that this product wasn't DSHEA compliant, so they couldn't sell it under DSHEA, that it was illegal for them to sell it, and they're claiming that Ghasparri made a misrepresentation about the legality of selling the product. Well, that it was safe and natural. That's the primary basis for their claim, that that's simply a misrepresentation of Well, let me dichotomize those four alleged misstatements for the purpose of the discussion today. I thought I just gave you two. Right. Right. So there are four misstatements. There are allegations that Ghasparri falsely stated that the product was DSHEA-compliant and legal. Okay? So those are two. They're also claiming there's misrepresentations with respect to safety and naturality. So let's take the first two, safety and DSHEA-compliant. Okay? In order to make those determinations, ThermoLife wants the jury to put on its FDA thinking cap and look at the law and evaluate whether, under DSHEA, Ghasparri had the right to sell the products in the first place. Do you want to have the jury decide whether the claims were false, that they were misrepresentations, and your client knew it as well? That's certainly what Ghasparri is alleging that. We dispute that. But for the purposes of Palm Wonderful today, when we're looking at the claims of legality and DSHEA-compliance, Palm Wonderful did not strike down Congress's position that you cannot privately enforce DSHEA. Or Fotomedics' decision, this Court's own decision, that you can't privately enforce the FDCA or DSHEA through the Lanham Act claims. Let's go back to my two issues, safety and natural. Why can't there be a viable Lanham Act claim if the theory is that a false representation as to safety and natural product was made on the label and in the advertising for the product? Doesn't that, under Palm Wonderful, survive as a potentially viable Lanham Act claim? Your Honor, to the extent that they want to use those issues, naturality and safety, in order to allege that the product shouldn't have been sold at all or was not compliant with DSHEA, then under Palm Wonderful, that's an attempt to privately enforce DSHEA, Your Honors. And to the extent that that's what Thermalife is trying to do, they can't do that. That's the Supreme Court's ruling in Palm Wonderful. If that's the case, then any good lawyer could try and make fit the argument that a representation as to safety and naturality is nothing more than an attack on the label itself under the Food, Drug, and Cosmetics Act. And the Supreme Court said, no, in Palm Wonderful, you can state a viable Lanham Act claim without having to become a private attorney general enforcing the labeling regulations under the FDA Act. I guess I would say, if they're not trying to privately enforce DSHEA, and they're not asking the court or the jury to interpret DSHEA or to determine legality under DSHEA, then Palm Wonderful might allow that claim. But what I'm— That goes to what the district court is going to allow in as evidence at trial, not whether or not the Lanham Act claim survives a motion to dismiss on summary judgment. So don't we have to send the Lanham Act claim back at least as to those two factors? No, you don't, Your Honor, because you don't even need to get to the falsity allegations. All you need to look at first is the district court's well-reasoned ruling regarding injury, because the district court said they can't even prove the fact of injury. One of the essential elements of a Lanham Act claim is proving the fact of injury. That is the Harper House case, the actual evidence of some injury resulting from the deception. What about TrafficSchool.com? I think Traffic School absolutely supports our position, Your Honor. In that case, the court said that an award of profits without proof of harm is an uncommon remedy unless it's a comparative or palming-off case. What the district court did in this decision, the reason why he rightly focused on the issue of actual damages and the fact of injury, is because this is a multi-competitor market. There are literally hundreds of other competitors. There are 300 other testosterone-boosting products. So in order to prove damages, Thermal Life can't just come to the court and say, Gasparri is a bad actor. They have to prove they've been damaged. And they didn't do that. Traffic School says we generally presume commercial injury when the defendant and plaintiff are direct competitors, and defendant's misrepresentation has a tendency to mislead consumers. Well, and Traffic School was essentially... Do you show in any way? I mean, that's a presumption. Okay? Did you, on summary judgment, come up with any facts to show that they were not injured? I'm sorry. Say that again, Your Honor. Did your client come up with any facts on summary judgment to overcome that presumption? Well, I don't think they get a presumption of injury. And what Traffic School... That's what we say. We generally presume commercial injury when they are competitors and is likely to mislead consumers. Right. So what Harper School... Well, let me back up for a second. What Harper House says is you have to have actual evidence of injury. Now there are some exceptions, which is what Traffic School is talking about when they're making that statement. One such exception is when you have a comparative case. If Gaspari had said ThermoLife says this about their products and they're wrong, or compared their products directly to ThermoLife's products, that would be a comparative case where you could use that presumption. This isn't a comparative case. The other situation where you can use that presumption is when there is an attempt to palm off on somebody else's product. And that's essentially one of the things that was happening in, if I believe, in Traffic School. I mean, so Your Honor, here we don't have an attempt to palm off. All we have is one consumer making a statement about their product in a market with hundreds of other manufacturers. So you can't just, ThermoLife can't just presume that there's injury. And I believe our reading of Traffic School suggests that you can award profits unless there's proof of harm. That would be a very uncommon remedy, especially in cases like this where it's not a comparative case. Do you want to address the spoliation issue? Yes, Your Honor. Well, one of the allegations that they've made here is that Gaspari wiped a computer. It's untrue, and I think it's representative of some of the rhetoric that we've seen in this case. What happened is they trotted out an expert that said that some high-level process had been run on the hard drive. When that expert was deposed, he couldn't definitively say that there had been any impropriety. He just had suspicions. Gaspari went out and got their own expert to look at the hard drive. That expert established that there had been no attempts to wipe any documents, that there had been no attempts to spoliate any evidence. And the proof is in the pudding, Your Honors. There were thousands of documents that got ultimately imaged and taken from that hard drive. So there was no spoliation, Your Honor. At the end of the day, ThermoLife had tens of thousands of records. And they had the opportunity to look at all those records before they presented their argument before the district court. And in fact, one of the first things they did is come in with a binder with all of these extra documents that they received from this ESI production and said, look, Your Honor, take a look at these. And Judge Wake did. So they haven't been harmed at all. Do I understand correctly that Judge Wake excluded James Berger, his report on the grounds that he didn't use reliable principles, methods, and so on in his survey? That was one of the bases, Your Honor. What were the other bases? Well, the first basis was that his expert report was irrelevant. Now, he doesn't specifically say relevance, but if you look at page 5 and 6 of Judge Wake's report, he talks about what Berger was looking for when he was setting up this survey. The questions that Berger was supposed to answer is, what does the effect of this statement have on the consumer? Does that encourage a consumer to go out and buy the product? So if there's a safety claim, does that encourage someone to go out and buy the product because it's safe? But Berger didn't ask that question. What he asked is, what he told these survey respondents are is, the products are illegal. What would you do if you found out or were told that this product was illegal? Would you continue buying it? That's a totally different question. Why is that irrelevant? Because it's asking a question that's not an issue. The issue is if customers were told that something is safe. Well, who says? I mean, that's their issue. It may not be your issue, but that's their issue. It's not – there's no question here about – there's no question here that asks what happens if a customer is – if a consumer is told that a product is illegal or unsafe. Leaving that aside for a second, do you – I'm having a hard time squaring Judge Wake's ruling with the cases that say quibbles over the principles and methods and techniques are jury issues. I'm sorry, Your Honor? It seems to me that we have cases that say that if you want to attack a survey on the grounds that they were not conducted using generally accepted survey principles, that's a jury issue. That's not something the judge should throw out at the first instance. Sure. Well, Your Honor, we did cite some cases in our brief that demonstrate why that's not so. When surveys are so unreliable and there's so many problems with the survey, a judge can rightfully look at it and determine that it's unreliable in the first instance. Well, how did it fail on principle? Well, one of the things – in addition to the biases in the questions telling these questions – Bias in the question goes to the weight. Sure. I think one of the things that you should focus in on is Berger's inability to validate the survey. Now, Berger himself, in a treatise that we provided to the court and it's on the record, says that validation is an important part of a survey, especially when someone else – That's a precondition to introducing the survey? Well, here's why it's an important part of the – Well, that's – is it? You're talking about evidence that would use rebuttal to the survey once admitted. It goes to the weight. You can impeach the survey, say it's not worth much, but as long as it's conducted according to standard survey principles and is relevant – Sure. – it seems they were definitely relevant. Well, Berger says it goes to the methodology. Validation goes to methodology, and here's why. When you outsource a survey and you don't do it yourself and you have a survey mill conduct the survey for you, you have to ensure that that survey mill actually sent out the survey to people who are qualified to take it, who are relevant consumers, who are qualified to take the survey, and that they took it seriously. That's why you validate a survey. Berger says it's an important part of the methodology. In this case, it didn't validate. In fact, what Berger says during the deposition is that he's never had a survey not validate. This is the first one, and that's because people weren't taking it seriously. So we don't even know if the survey mill actually gave the survey to anybody. What we do know is that people responded saying that they were Mickey Mouse, Donald Duck, and Berger's own validation – third-party validator said that it's very obvious that people aren't taking this serious. So given that circumstances, it was perfectly appropriate for Judge Wake to look at it and say, this survey did not comply with appropriate methodologies, and I'm unwilling to accept it. Thank you. Thank you, Your Honor. Mr. Cardozo. Thank you, Your Honor. The most important thing you didn't hear was any answer to the fact of how the legal error on Palm Wonderful spilled over and compromised the district court's analysis of all the other elements. There was emphasis on the injury element. If you look at excerpts of Record 32, lines 23 to 24, moreover, as concluded above, G&I's statements have not been shown to have been false at the time they were made. court's analysis of injury tied to its erroneous view that until the FDA has weighed in, I've got no business sizing it up. The other reason why you know it compromised it is the perfunctory analysis of the injury element and failure to discuss the wealth of evidence in the record show a triable issue of fact on injury. Most importantly, this is one of the most unusually compelling cases of injury because you have something you don't normally have in a Lanham Act case. The truth was revealed and the product disappeared from the market completely. That means had the advertisements, truthful advertisements, been made, they wouldn't have sold any of these products at all. They would have been redistributed to the rest of the market. One thing we know, we can argue about how much thermal life would have gotten, but because it unquestionably was a direct competitor that had some market share, it would be unfathomable to conclude that it wouldn't at least get one of those sales. The task on summary judgment is not to show the unfathomable. It's simply to show that a jury could permissibly draw that inference. Then you have all of this other evidence, the message board posts, the testimony of Ron Kramer, all of these other things that show clearly a linkage between these products, clearly the probability of injury, and no discussion of that in the district court's opinion because this error, POM wonderful error, colored the whole thinking. Okay, could you address briefly counsel's attack on Burgess? Sure. It was a great cross-examination that counsel gave, but there's absolutely no law that validation goes to methodology and not weight. In fact, Mr. Burger has been admitted hundreds of times with surveys. It's a cross-examination point. It's as simple as that. I do also want to point to the case your Honor cited, Judge Fischer, and that's the traffic school case. It wasn't a comparative advertising case. It points out that when the direct competitors and the advertisements are false, the inference of injury is almost automatic. And that's because, you see, in Lanham Act cases you have, the reason you usually need surveys and so on is because you have literally true but misleading allegations. And then you have people who aren't direct competitors. That's the universe of Lanham Act cases. But in this universe, direct end-to-end competitors, directly false statements, and unmistakable evidence of consumer confusion, they bought a product that shouldn't have been on the market at all. They absolutely were misled. Those sales would have gone to the rest of the market. Thermalife's in the market. That's enough to raise a tribal issue of fact before you even get to the message board, before you get to Kramer's testimony, before you get to the expert evidence, however your Honors comes out on that. Mr. Cariozzo, thank you very much. Thank you, Mr. Booker. The case just argued is submitted.
judges: Silverman, Fisher, Tallman